IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN (JACKSON) DIVISION

**DAVID ESTUS BOLEWARE**
                     **PLAINTIFF**

**V.**         **CIVIL ACTION NO. 3:12CV760 HTW-LRA**

**CAROLYN W. COLVIN,**
**ACTING COMMISSIONER OF SOCIAL SECURITY**    **DEFENDANT**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

David Boleware appeals the final decision denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that the decision be affirmed.

### Factual and Procedural Background

On October 30, 2009, Boleware filed applications for SSI and DIB, alleging he became disabled on November 30, 2008, due to rheumatoid arthritis, a torn rotator cuff, depression, and pain in his back and right hip. He is a high-school graduate with over 30 years of work experience as a carpenter, and was approximately 51 years old at the time of filing. The applications were denied initially and on reconsideration. Boleware appealed the denial and on April 29, 2011, Administrative Law Judge Nancy L. Brock ("ALJ") rendered an unfavorable decision finding that Plaintiff had not established a

disability within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review. He now appeals that decision.

Upon reviewing the evidence, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. At step one of the five-step sequential evaluation,[1] the ALJ declined to make a definitive finding, noting that Plaintiff continues to do occasional carpentry work and may have engaged in substantial gainful activity since his alleged onset date. At steps two and three, the ALJ found that although Plaintiff's arthritis of multiple joints was a severe impairment, it did not meet or medically equal any listing. At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work except he should not perform constant repetitive movements. Based on vocational expert testimony, the ALJ concluded that given Plaintiff's age, education, work experience, and residual functional capacity, he could perform work as a ticket-taker, gate-tender, and marker/labeler.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2)

---

[1] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d at 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## Discussion

Boleware alleges that the Commissioner's decision should be reversed or alternatively remanded because the ALJ failed to apply the correct legal standards in determining both his credibility and residual functional capacity. The Court rejects these arguments for the reasons that follow.

**1.    Substantial evidence supports the ALJ's credibility determination.**

Boleware effectively argues in his first assignment of error that the ALJ's adverse credibility determination is not supported by substantial evidence because she failed to conduct a thorough evaluation of his physical impairments in compliance with Social Security Ruling 96-7p.

3

SSR 96-7p requires the ALJ to engage in a two-step process. In the first step, the ALJ must consider whether there is an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7p, 1996 WL 374186, at * 2. In the second step, the ALJ "must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.* He should consider Plaintiff's daily activities, symptoms, factors that precipitate and aggravate those symptoms, medication and side effects, types of treatment, and functional limitations. *Id*. at * 3.

In compliance with SSR 96-7p here, the ALJ indicated that after careful consideration, she found Plaintiff's medically determinable impairments could reasonably be expected to produce some of his alleged symptoms, but his testimony regarding the intensity, persistence, and limiting effects were not fully credible. Whenever statements about the intensity, persistence or limiting effects of symptoms are not substantiated by objective medical evidence, the ALJ has the discretion to make a finding on the credibility of the statements and the determination is entitled to considerable deference. *Foster v. Astrue*, 277 F. App'x. 462 (5th Cir. 2008); *see also Gonzales v. Astrue*, 231 F. App'x 322 (5th Cir. 2007) (adverse credibility determination made by an ALJ was supported by inconsistencies between claimant's testimony and documentary evidence). Substantial evidence supports the ALJ's credibility assessment in this case.

Boleware testified that while he continues to do carpentry work approximately one week per month, it is considerably less than before because of his physical impairments. For years, he has experienced pain somewhere in his body, which his primary care physician suspects is due to rheumatoid arthritis. His shoulder pain was reportedly so bad in November 2008 that Plaintiff testified that he could not handle the work anymore. He also has radiating pain mostly in his right hip, and pain in his arms, knees, and back. He no longer walks for exercise and cannot do "anything repetitive like bending over" or hammering. He also cannot stand or sit for longer than an hour at a time before experiencing discomfort or pain. Despite his pain, Plaintiff testified that he does occasional carpentry work, drives, and takes care of the home where he lives with his mother and aunt. He also "bush-hogs" every couple of months despite fracturing his wrist in April 2010.[2]

The ALJ properly found that the medical evidence of record did not support the degree of pain or limitations alleged. Although Plaintiff's treating physician, Dr. James Ervin, was of the opinion that Plaintiff's joint pain was "suggestive of rheumatoid arthritis," there is no affirmative diagnosis of rheumatoid arthritis in the record. Treatment records from October 2008 reflect that Plaintiff complained of daily diffuse joint pain, particularly in his back, knees, shoulders, and elbow. Dr. Ervin opined at that time that Plaintiff suffered from polyarthralgia and recommended that he undergo a

---

[2] ECF No. 6, pp. 47-60.

rheumatology evaluation. Plaintiff was also prescribed Lorcet and Celebrex which reportedly improved his symptoms. Despite the improvement, Plaintiff stopped taking his medication and was instructed to resume when he complained of joint pain in May 2009. He was also again referred for a rheumatology evaluation, but the ALJ noted that he was never approved for the evaluation despite Dr. Ervin's diagnosis of rheumatoid arthritis in November 2009. Although records from March 2010 indicate an elevated ANA and C-reactive protein levels, Plaintiff's rheumatoid factor was also negative.[3]

In a comprehensive physical examination performed in January 2010, DDS examiner Dr. Christopher Reed noted that Plaintiff had been "worked up for multiple etiologies" with no definitive diagnoses. Plaintiff related to Dr. Reed that he had been experiencing constant sharp pain in his right hip, shoulder, and back for years that was aggravated by movement or long periods of standing, but he denied any traumatic injuries. Contrary to his treatment records, he also denied that Celebrex provided any relief for his back pain, and stated that Lorcet only minimally relieved his hip pain. He also reported that he had been told that he had a "torn rotator cuff," but Dr. Reed noted that an MRI had never been performed. On further examination, Dr. Reed observed that Plaintiff was a "well-developed, well-nourished male in no acute distress." He was able to lay straight back and get on and off the examination table, walk on his heels and toes, perform heel-to-toe maneuvers, and squat, all without difficulty. He had a normal range

---

[3] ECF No. 6, pp. 206-217.

of motion in all extremities.  His gait was also within normal limits; he could grip 5/5 bilaterally; his straight leg raises were negative; and, his sensory function was intact in both his upper and lower extremities.  Notwithstanding Plaintiff's subjective complaints, Dr. Reed found no objective evidence to support any functional limitations in the areas of sitting, lifting, carrying, seeing, hearing or speaking.[4]

These findings were consistent with the other objective evidence of record.  X-rays taken in December 2009 revealed disc space narrowing at L1-2 and L2-3, lumbar osteophytes, and mild to moderate degenerative changes in both hips with joint space narrowing and osteophytes.  X-rays taken in July 2010 revealed mild demineralization and sclerosis of the right hip, preserved joint space, no effusion, and well-maintained joint space in the knees.  While Plaintiff testified at the administrative hearing that he wraps his wrist and experiences pain when he grips with his hand, the record reflects that within months of undergoing wrist surgery, he had no complaints and demonstrated no instability.  By July 2010, his wrist fracture was "well-healed."  In September 2010, Plaintiff reported that he was able to practice his trade as a carpenter "without much difficulty." [5]

Given the evidence as stated, the Court finds that the ALJ's credibility determination in this case fully complies with the applicable legal standards and is

---

[4] ECF No. 6, pp. 198-201.

[5] ECF No. 6, pp. 255-280.

supported by substantial evidence.  In compliance with SSR 96-7p, she gave specific reasons, supported by the record, for her adverse credibility findings, and those findings will not be disturbed here.

### 2. Substantial evidence supports the ALJ's residual functional capacity assessment.

As his second point of error, Plaintiff alleges that the ALJ applied the wrong legal standard in determining that he had the residual functional capacity to perform light work without constant repetitive movements.  Plaintiff does not identify any particular regulation that was violated, but generally asserts that the ALJ failed to consider his multiple-joint arthritis and associated pain in assessing his functional limitations.

The sole responsibility for determining a claimant's residual functional capacity rests with the ALJ.  20 C.F.R. § 404.1546(c).  A neutral reading of the ALJ's assessment reflects a narrative discussion of Plaintiff's ability to do sustained work-related activities in an ordinary work setting on a regular continuing basis in compliance with Social Security Ruling 96-8p. 1996 WL 374184, at *1, 3.  20 C.F.R. § 404.1546(c) (2009).  The ALJ expressly "considered the credible impact of any residual limitations in the claimant's wrists with other joint complaints in finding the claimant should not perform constant repetitive movements."  In doing so, she noted that "[w]hile the claimant may have limitations associated with arthritis, the evidence (including the claimant's admitted work activity and activities of daily living) supports a finding that he remains capable of standing and walking at least six hours in an eight-hour workday, lifting twenty pounds,

lifting and carrying ten pounds frequently, and sitting, pushing and pulling as required in light work."[6]

In reaching this conclusion, the ALJ assigned less than controlling weight to the medical opinions rendered before Plaintiff fractured his wrist in April 2010. Based on the available evidence before then, two state agency physicians opined that Plaintiff was capable of performing medium work. As noted *supra*, Dr. Reed similarly concluded that Plaintiff had no functional limitations in any area. In evaluating his residual functional capacity, the ALJ properly determined that the evidence developed after Plaintiff's wrist fracture, including his subjective complaints, indicated that he was more limited than these findings suggested. An ALJ is free to reject the opinion of any physician, in whole or in part, when the evidence supports a contrary conclusion. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Martinez v. Chater*, 64 F.3d 172 (5th Cir. 1995).[7]

The evidence did not establish that Plaintiff was so functionally impaired that he could not engage in any substantial gainful activity, however. In a letter submitted in January 2011, Dr. Ervin opined that Plaintiff's rheumatoid arthritis would make it "essentially impossible for him to be able to perform his job as a carpenter." As noted by the ALJ, the "[i]nability to perform one's specific past work, however, does not

---

[6]ECF No. 6, p. 75.

[7]ECF No. 6. pp. 198-209; 222-223.

necessarily equate to disability within the meaning of the Act."[8]  To that end, she expressly found at step four of the sequential evaluation that Plaintiff could not return to his past relevant work.  Based on the vocational expert's testimony, the ALJ concluded at step five that Plaintiff could perform light work without constant repetitive movements in the representative occupations of ticket-taker, gate-tender, and marker/ labeler.  In a response to a hypothetical with these limitations, the vocational expert testified as follows:

> ALJ: Would there be jobs such an individual could perform?
>
> A: I certainly think based on that hypothetical, Your Honor, and one of the jobs I think he could perform would be that of a ticket taker, which is a very simple type job, and that would be 344.667-010 and that, of course, is light with an SVP: 2.  Approximately 600 of these type jobs in Mississippi and more than 195,000 in the national economy.  Also, Your Honor, I think another job that would certainly fit that hypothetical would be that of gate tender and a gate tender would be 372.667.-030.  That's light with SVP: 3, which basically means they can read and write.  There's approximately 2,000 of these type jobs in Mississippi and more than 580,000 in the national economy.  Also, I think there would be another job that certainly would fit that would be a market [sic] or labeler.  That's a person who puts the labels and stickers on boxes and that would be 920.687-126 and that is light with SVP: 2.  It's approximately 450 of these type jobs in Mississippi and more than 280,000 in the national economy.  These are some sample jobs based on that hypothetical, Your Honor.
>
> ALJ: And the marker, would that require constant, repetitive use of the hands?
>
> A: It's not constant, no, ma'am.[9]

---

[8]ECF No. 6, pp.  77, 277.

[9]ECF No. 6, p. 59.

Although this testimony went unchallenged at the administrative hearing, Plaintiff now contends that these occupations exceed his residual functional capacity because they require more than the occasional use of the hands.  The Commissioner counters that only a marker/labeler as defined in the *Dictionary of Occupational Titles* ("D.O.T.") seemingly contradicts the ALJ's finding that he could not perform constant repetitive work with his hands.  The Commissioner correctly notes that the D.O.T. provides that a marker/labeler requires constant repetitive reaching and handling and occasional fingering.  *See Dep't of Labor*, D.O.T. § 920.687-126 (Marker II), 1991 WL 687992 (G.P.O. 1991).

To the extent Plaintiff asserts that the ALJ erred in failing to expressly ask the vocational expert whether his opinion conflicts with the D.O.T., the Court finds that any error was harmless.  The Fifth Circuit has long held that neither the D.O.T. nor the vocational expert's opinion controls.  *Carey v. Apfel*, 230 F.3d 131,146-147 (5th Cir. 2000).  The vocational expert also identified two other jobs consistent with the Plaintiff's residual functional capacity that he could perform.  Further, the critical issue is not whether the vocational expert's testimony and the D.O.T. conflict, but whether substantial evidence supports the ALJ's finding that he can perform light work.  *Id.*  The mere fact that working may cause Plaintiff pain or discomfort does not mandate a finding of disability, particularly where substantial evidence indicates that he can work despite being in pain or discomfort, as it does here.  *See Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980); *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985).

For these reasons, it is the opinion of the undersigned United States Magistrate Judge that Defendant's Motion to Affirm the Commissioner's Decision be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the Commissioner be entered.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections.  Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 27th day of January 13, 2014.

/s/  Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE